FIRST CITIZENS BANK AND TRUST COMPANY, LINCOLNTON, NORTH CAROLINA v. NORTHWESTERN INSURANCE COMPANY AND GUY A. MELTON

No. 7927SC86

(Filed 8 January 1980)

1. **Rules of Civil Procedure § 56.3 — summary judgment — supporting affidavits — timeliness of filing — sworn or certified papers required**

The trial court did not err in allowing supplemental affidavits, which were filed four days before hearing on a summary judgment motion, to be considered on the day of the hearing, but the trial court erred in considering a portion of an affidavit which was not supported by sworn or certified copies of papers to which the affidavit referred.

2. **Insurance § 77 — theft of boat — timeliness of notice to insurer — genuine issue of fact**

In an action by plaintiff to recover on a promissory note executed by individual defendant and to recover as the loss payee in a policy of insurance issued by defendant insurance company to individual defendant to cover loss or damage to a boat purchased by individual defendant in which plaintiff held a security interest, a genuine issue of fact existed as to whether individual defendant gave notice to defendant insurer "as soon as practicable," as required by the insurance policy, concerning the theft of the boat, and the trial court therefore erred in entering summary judgment for plaintiff.

APPEAL by defendant, Northwestern Insurance Company, from *Friday, Judge*. Judgment entered 6 December 1978 in Superior Court, LINCOLN County. Heard in the Court of Appeals 27 September 1979.

This is an appeal from a summary judgment rendered in favor of plaintiff, First Citizens Bank and Trust Company, Lincolnton, North Carolina (Bank), and against Northwestern Insurance Company (Company). The Bank filed a complaint against defendant, Melton, seeking recovery for default on a promissory note and breach of a security agreement and against the Company, seeking to recover as the loss payee in a policy of insurance issued by the Company to Melton to cover loss or damage to a boat purchased by Melton in which the Bank held a security interest. In the complaint, the Bank alleged that on 30 March 1977, Melton executed a promissory note in the principal sum of $9,409.01 plus interest, and a security agreement to the Bank wherein he pledged as security a 1977 Sea Ray Boat identified in the combination note and security agreement as 220-HT-SER-650 4M 0976-220 HT010. The complaint alleged that Melton had defaulted on the note and breached the security agreement; and that as of 27 July 1977, the balance due on the note was $9,390.30 plus interest. As to the Company, the complaint alleged that on 30 March 1977, the Company issued a policy to Melton wherein the boat pledged as security in the security agreement was insured against loss and damage. The Bank was listed as loss payee in the policy, which had a liability limit of $9,500. The complaint further alleged that on 20 September 1977, Melton discovered that his boat had disappeared from the slip where it had been stored. The insurance policy was alleged to have been in effect at the time the boat was discovered missing, and the Company refused payment under the policy after demand for payment had been made on it.

Melton filed an answer and a cross claim on 30 May 1978 wherein he admitted the execution of the note and security agreement and offered a general denial as to the amount owed on the note. In his cross claim against the Company, Melton alleged that the Company was fully liable for the loss of the boat held as security by the Bank.

The Company alleged in its answer: that it was not liable to the Bank; that there had not been a loss sustained under the terms of the policy; that no proof of loss had been filed as required by the policy; that notice of loss had not been given to the Company as soon as practicable; and that there had not been compliance with the provisions of the policy. The Company admitted

execution of the note and security agreement as alleged in the complaint and the issuance of an insurance policy.

On 24 July 1978, the Company filed answer to Melton's cross claim, wherein the issuance of an insurance policy was admitted, but liability on the policy was denied on the same grounds as set out in the answer to the Bank's complaint. The Bank filed an amendment to its complaint with consent of both defendants on 4 October 1978, wherein it was alleged that Melton executed and delivered the note and security agreement on 30 March 1977 to Lincoln Marine, Inc. (Lincoln), the seller of the boat. The amendment also alleged that Lincoln subsequently assigned the note and security agreement to the Bank on 30 March 1978. The Company filed answer to the amendment, wherein the execution and delivery of the note and security agreement were once again admitted.

The Company took the deposition of Melton, who testified: that the boat, which he financed through the Bank and insured through the Company, was discovered missing on 20 September 1977; that he told law enforcement officers about the disappearance on the day he discovered the boat missing; that the officers told him to wait a couple of days before calling the Company; and that on 25 September 1977, he telephoned an agent of the Company to report the missing boat.

On 9 November 1978, the Bank filed a motion for summary judgment against the Company along with an affidavit of a bank officer, stating that several proofs of loss were submitted to the Company but that the Company refused to make payment under the policy. Melton stated in his affidavit that he notified the Company's agent of the loss within a few days after 25 September 1977, that the balance due on his debt to the Bank was $9,569.34 on 20 September 1977, and that he had submitted proofs of loss to the Company on 14 December 1977, 23 December 1977, and 2 February 1978. Each proof of loss was rejected by the Company.

On 29 November 1978, the Company filed a motion for summary judgment against the Bank. In his affidavit, K. W. Duncan, an officer of the Company, stated that the Company was not informed of the loss of the property until a number of days after its alleged disappearance and that an acceptable proof of loss was not filed with the Company within 90 days from day of loss as re-

quired by the insurance policy. E. C. Dean, a claims adjuster, stated in his affidavit that the serial number of the boat insured by the Company was different from the serial number alleged in the Bank's complaint. Charles Cox, an agent of the Company, stated in his affidavit that he was notified of the loss on 14 October 1977.

On 30 November 1978, the Bank filed an affidavit of F. B. Grigg, President of Lincoln; Merle Beal, Grigg's secretary; and Melton. Said affiants alleged that Melton purchased one 1977 Sea Ray Boat from Lincoln, that if there were any variation in the motor number or serial number, the variation arose through an inadvertent error; and that the policy should cover and insure the boat which Melton purchased from Lincoln on 30 March 1977.

The court allowed the Bank to correct two alleged typographical errors to change the serial number of the boat from 650 4M 0976-220 to 650 4M 0976-220HT010-7 and the motor number to W566684. The date the note and security agreement were assigned to the Bank by Lincoln was changed from 30 March 1978 to 30 March 1977.

Summary judgment was allowed ordering the Company to pay the Bank $9,500 with interest. The Company appealed.

*M. T. Leatherman and Daniel Wilson Barefoot, for plaintiff appellee.*

*Frye, Booth & Porter, by R. Michael Wells and John P. Van-Zandt III; and Don M. Pendleton, for defendant appellant, Northwestern Insurance Company.*

ERWIN, Judge.

G.S. 1A-1, Rule 56(c), of the Rules of Civil Procedure limits entry of summary judgment to situations where no genuine issue as to a material fact exists, and a party is entitled to a judgment as a matter of law. G.S. 1A-1, Rule 56(c); *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E. 2d 795 (1974).

If a genuine issue of a material fact does exist, the motion for summary judgment must be denied. *Bank v. Evans*, 296 N.C. 374, 250 S.E. 2d 231 (1979); *Zimmerman v. Hogg & Allen, supra.*

" ' "The determination of what constitutes a 'genuine issue as to any material fact' is often difficult. It has been said that an issue is material if the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail . . . . It has been said that a genuine issue is one which can be maintained by substantial evidence . . . ." ' *McNair v. Boyette*, 282 N.C. 230, 192 S.E. 2d 457."

*Zimmerman v. Hogg & Allen*, 286 N.C. 24, 29, 209 S.E. 2d 795, 798 (1974).

Appellant contends that a genuine issue of material fact exists as to whether the boat insured under its insurance policy is the one in which plaintiff had a security interest.

In moving for summary judgment, appellant relied on the discrepancy between the serial number identifying the boat in plaintiff's security instrument and the serial number of the boat covered by its insurance policy. However, four days prior to the hearing on the parties' respective summary judgment motions, plaintiff served on appellant a joint affidavit and a Manufacturer's Statement of Origin. The joint affidavit stated in pertinent part:

"On March 30, 1977, Guy A. Melton purchased from Lincoln Marine, Inc., a new 1977 Model 220 hardtop Sea Ray inboard-outboard boat, 235 Horsepower, bearing Motor No. W566684 and manufacturer's Serial No. 6504M0976-220HT010-7, as shown on manufacturer's statement of origin and bill of sale, photocopies of which are hereto attached. Immediately following the sale, Merle P. Beal, secretary for Mr. Grigg of Lincoln Marine, Inc., telephoned Mr. Charles Cox, of Charles Cox Insurance Agency, Gastonia, N. C., and ordered an insurance policy covering said boat and gave the serial number and motor number over the telephone.

Shortly thereafter, Northwestern Insurance Company Policy No. BOP 4325 was written by Charles Cox Insurance Agency, showing Motor No. W566684 and Serial No. 77220-HT010 for said boat as indicated on a photocopy of the policy which is hereto attached."

The Manufacturer's Statement of Origin identified the boat as follows:

"YEAR 1977                    MODEL 220 HARDTOP

Hull Length 21 Ft. 7 In.    Beam 8 Ft. 0 In.

Motor No. W566684      HP 235 OMC

Mfg. Serial No. HIN# SER6504M0976-220HT010-7"

These two items, if properly admitted and when viewed collectively, clearly indicate that the boats were one and the same, and it would be incumbent upon appellant to come forward with some evidence to show that a genuine issue of material fact still existed.

Appellant contends that the joint affidavit was improperly considered by the court at the hearing on the motions for summary judgment, because (1) the affidavit was filed on the day of the hearing of the motion, and (2) the affidavit was not based on competent evidence.

In *Insurance Co. v. Chantos*, 21 N.C. App. 129, 203 S.E. 2d 421 (1974), we held that where a party had filed a motion for summary judgment but had waited until the day of the hearing of the motion to file and serve his supporting affidavits with the motion as required by G.S. 1A-1, Rule 6(d), of the Rules of Civil Procedure, the trial court erred in considering the affidavits supporting the motion for summary judgment.

In the instant case, plaintiff had properly served its original affidavits in support of its motion for summary judgment but had subsequently offered a supplemental joint affidavit as provided for in G.S. 1A-1, Rule 56(e), of the Rules of Civil Procedure. Thus, the situation is clearly distinguishable from that presented in *Insurance Co. v. Chantos, supra.*

In *Insurance Co. v. Chantos, supra,* we noted:

"[A]ccording to the date of the defendant's affidavit, and the date of the verification thereof, it was signed on the same day that counsel certified that notice of the motion for summary judgment was mailed to plaintiff's counsel. It seems clear, therefore, that the affidavit was available for service

with the notice of motion for summary judgment. If this practice were permitted, affidavits in support of a motion for summary judgment could always come as a surprise to the opposing party and would effectively deny the opposing party a chance to present affidavits in opposition to the motion.

Undoubtedly, Rule 56(e) grants to the trial court wide discretion to permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. However, this provision presupposes that an affidavit or affidavits have already been served. The rule speaks only of supplementing or opposing. Clearly, it does not intend to authorize filing, on the day of the hearing, the only affidavits supporting the motion for summary judgment."

*Id.* at 131, 203 S.E. 2d at 423-24.

[1]   Here, appellant was served with the *supplemental* affidavits four days prior to the hearing, and it had ample time to present opposing affidavits. Thus, the trial court did not err in allowing the affidavits to be considered on the day of hearing the motions for summary judgment.

G.S. 1A-1, Rule 56(e), of the Rules of Civil Procedure provides in pertinent part: "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Plaintiff failed to comply with the dictates of G.S. 1A-1, Rule 56(e), of the Rules of Civil Procedure. It did not submit "sworn or certified copies of all papers or parts thereof" referred to in its joint affidavit. Therefore, the court erred in considering the Manufacturer's Statement of Origin and the bill of sale. That portion of the affidavit based thereon as well as the conclusions of law contained therein should have been disregarded in considering the propriety of summary judgment.

Even without the evidence contained in the Manufacturer's Statement of Origin and the bill of sale, plaintiff's forecast of evidence is sufficient if considered alone to compel entry of a directed verdict in its favor.

[2]   However, a genuine issue of fact exists as to whether notice was given "as soon as practicable" as required by appellant's in-

surance policy assuming that the boat missing and the boat covered by the policy are the same one.

Justice Parker, in his concurring opinion in *Muncie v. Insurance Co.*, 253 N.C. 74, 82-83, 116 S.E. 2d 474, 480 (1960), stated:

> "[T]he policy requires that notice of the accident shall be given by the insured to the insurer 'as soon as practicable.' That means to give such notice within a reasonable time, for the word 'practicable' means 'capable of being put into practice, done, or accomplished; feasible.' Webster's New International Dictionary, 2nd Ed.; *Unverzagt v. Prestera*, 339 Pa. 141, 13 A. 2d 46; *Callaway v. Central Surety & Ins. Corp.*, 107 F. 2d 761; *London Guarantee & Accident Co. v. Shafer*, 35 F. Supp. 647; *American Lumbermen's Mutual Casualty Co. v. Klein*, 63 F. Supp. 701; *Young v. Travelers Ins. Co.*, 119 F. 2d 877; Anno. 18 A.L.R. 2d p. 462, § 14.
>
> What is a reasonable time, when the facts are not in dispute, as here, is a question of law to be decided by the Court. *Depot Cafe v. Century Indemnity Co.*, 321 Mass. 220, 72 N.E. 2d 533; *Unverzagt v. Prestera, supra.*"

Here, there is a dispute as to when defendant Melton notified appellant of the alleged theft. The corollary of the above rule established in *Muncie* is that when the facts are in dispute, as here, the question as to whether or not notice was given "as soon as practicable" is for the jury. *See Freshman v. Stallings*, 128 F. Supp. 179 (E.D. N.C. 1955); *Muncie v. Insurance Co., supra* (J. Parker, concurring).

Also, a dispute exists as to the amount of the indebtedness owed plaintiff by defendant Melton which must be resolved in order to ascertain plaintiff's insurable interest under the policy, if any.

Appellant's other assignments of error need not be considered.

The judgment entered below is

Reversed.

Judges VAUGHN and HILL concur.