CITY OF COLUMBUS, APPELLEE, *v.* TRUAX, APPELLANT.

(No. 82AP-304—Decided June 7, 1983.)

*Mr. Gregory S. Lashutka,* city attorney, *Mr. Ronald J. O'Brien,* city prosecutor, and *Mr. David E. Tingley,* for appellee.

*Mr. J. Elliott Van Dyne,* for appellant.

MOYER, J. This case is before us on the appeal of defendant-appellant, William H. Truax, from a judgment of the Franklin County Municipal Court finding defendant guilty of violating Section 2171.04(a) of the Columbus City Code (hereinafter C.C. 2171.04[a]) and imposing a $50 fine.

On January 12, 1982, defendant walked across Marconi Boulevard at Gay Street in downtown Columbus. One other person was walking in the same direction in the crosswalk and no one was approaching defendant from the other direction. Defendant remained within the crosswalk, but he purposely walked in the left half of the crosswalk in violation of C.C. 2171.04(a), which reads:

"Pedestrians shall move, whenever practicable, upon the right half of crosswalks."

Defendant and the arresting officer had discussed this Traffic Code section previously and, according to the officer's testimony, defendant purposely violated C.C. 2171.04(a) and asked the officer to give him the ticket so defendant could challenge the constitutionality of the Traffic Code section. As Alexander Pope reflected, "What mighty contests rise from trivial things!" *The Rape of the Lock,* Canto I, Line 1.

After the trial court overruled defendant's motion to dismiss, defendant entered a no contest plea and the court found him guilty as charged.

Defendant raises the following two assignments of error, entitled "Issues Presented for Review," in support of his appeal:

"I. Section 2171.04(a) of the Columbus Traffic Code is impermissibly vague in violation of the Fourteenth Amendment to the U.S. Constitution.

"II. Section 2171.04(a) of the Columbus Traffic Code is an unreasonable and impermissible exercise of the police power and, therefore, unconstitutional under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution."

In support of his first assignment of error, defendant argues that C.C. 2171.04(a) is impermissibly vague since ordinary persons are forced to guess at when it is "practicable" to walk in the

right half of a crosswalk and when it is impracticable to do so; therefore, pedestrians may lawfully walk in the left half of the crosswalk.

The law regarding the due process problems presented by an allegedly vague statute is well-established. As the Supreme Court of Ohio recently reiterated:

"It is axiomatic that all legislative enactments enjoy a presumption of constitutionality. * * * Similarly uncontroverted is the legal principle that the courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional. * * *" *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, 61.

And, in the words of the United States Supreme Court:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. * * *" *Connally* v. *General Constr. Co.* (1926), 269 U.S. 385, 391.[1]

This rule was further explained in *Grayned* v. *City of Rockford* (1972), 408 U.S. 104, 108, as follows:

"* * * [B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. * * *"

In other words:

"* * * . 'The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.' *United States* v. *Harriss* [(1954), 347 U.S. 612, 617] * * *." *State* v. *Dorso, supra,* at 61; see, also, *Columbus* v. *Snyder* (Feb. 5, 1981), Franklin App. No. 80AP-390, unreported.

In its analysis of a statute prohibiting playing music or amplifying sound so as to disturb the peace and quiet of the neighborhood, the Ohio Supreme Court noted that a legislative body is not required to define every word in a statute. *State* v. *Dorso, supra,* at 62. The court looked to dictionary definitions of "neighborhood" and found that the meaning of the word was "hardly likely to confound the person of ordinary intelligence," *id.,* and was "well within the ken of the ordinary person." *Id.*

Likewise, we turn to the definitions of "practicable" found both in dictionaries and in the case law for our analysis of whether C.C. 2171.04(a) is so vague that ordinary persons must necessarily guess at its meaning. Black's Law Dictionary (5 Ed. 1979) defines "practicable" as: "* * * that which may be done, practiced, or accomplished; that which is performable, feasible, possible * * *." Our review of the law of other jurisdictions indicates that other state courts generally agree with this definition. See, *e.g., Miller* v. *State* (1968), 73 Wash. 2d 790, 793-794, 440 P.2d 840; *Unverzagt* v. *Prestera* (1940), 339 Pa. 141, 144, fn., 13 A.2d 46;

---

[1] The Ohio Supreme Court found the facts of *Connally* v. *General Constr. Co.* to be inapposite, but did not disapprove of its rationale in *State* v. *Dorso, supra,* at 62-63. However, *Connally* was expressly approved as "the proper standard for determining if a statute is vague" in *State* v. *Young* (1980), 62 Ohio St. 2d 370, 372 [16 O.O.3d 416], and *State* v. *Phipps* (1979), 58 Ohio St. 2d 271, 273 [12 O.O.3d 273].

*Beech Fork Coal Co.* v. *Pocahontas Corp.* (1930), 109 W. Va. 39, 46-47, 152 S.E. 785; *People, ex rel. Williams,* v. *Errant* (1907), 229 Ill. 56, 66, 82 N.E. 271.

The Ohio Supreme Court has also defined "practicable" as "capable of being put into practice or accomplished," or something that is "reasonably possible." *State, ex rel. Fast & Co.,* v. *Indus. Comm.* (1964), 176 Ohio St. 199, 201 [27 O.O.2d 86].

The Ohio Supreme Court recently noted that "neighborhood" need not be defined by metes and bounds to give persons of ordinary intelligence fair warning of the area within which the playing of loud music is prohibited. *State* v. *Dorso, supra,* at 62. Likewise, the city of Columbus is not required to list the situations in which it becomes impracticable to travel in the right half of a crosswalk, nor is the city required to paint a line down the center of each of the city's crosswalks to aid persons in determining where the right half of a crosswalk ends and the left half begins.

We hold that the use of the word "practicable" in C.C. 2171.04(a), which requires pedestrians to walk in the right half of a crosswalk when practicable, does not render the section unconstitutional or void for vagueness. The Columbus Traffic Code section in question puts ordinary persons on notice that, if they walk in the left half of the crosswalk, they are violating the code section, unless, for some reason, such as crowds of pedestrians, a parked vehicle or a hole in the pavement, it is not feasible or practicable to walk in the right half of the crosswalk. Defendant's first assignment of error is overruled.

Defendant alleges in his second assignment of error that C.C. 2171.04(a) is an impermissible and unconstitutional exercise of the city's police power.

Section 3, Article XVIII, of the Ohio Constitution grants municipalities the authority "* * * to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

In 1907, the Ohio Supreme Court noted that:

"It is almost an axiom that anything which is reasonable and necessary to secure the peace, safety, morals and best interests of the commonwealth may be done under the police power; and this implies that private rights exist subject to the public welfare. * * *" *Phillips* v. *State* (1907), 77 Ohio St. 214, 216.

The power of a municipality to pass ordinances to promote the health, safety, morals, or general welfare of the public is very broad and is not subject to precise definition. However, a city's police power is not unlimited.

A municipal ordinance, in order to be a valid exercise of the municipality's police power, "* * * must not be arbitrary, discriminatory, capricious or unreasonable and must bear a real and substantial relation to the health, safety, morals or general welfare of the public." *Cincinnati* v. *Correll* (1943), 141 Ohio St. 535 [26 O.O. 116], paragraph one of the syllabus.

The ordinance in question deems the act of walking in the left side of a crosswalk to be a criminal act, even if a pedestrian is the only person in the crosswalk. The criminal nature of the activity does not flow from the possible danger of a pedestrian walking against the flow of pedestrian traffic in the left side of the crosswalk. The city has not explained to our satisfaction how requiring persons to walk in the right half of a crosswalk, when no one else is in the crosswalk, promotes the public health, safety, morals or general welfare. We appreciate the city's concern for promoting the safe flow of pedestrian traffic, particularly in crowded business areas, by requiring persons to remain in the right side of a crosswalk; however, the ordinance in question goes far beyond that purpose

and makes misdemeanants of every person who steps over the invisible centerline of a crosswalk. If such an ordinance contributes to the public health, safety, morals or general welfare of Columbus, the city could reasonably argue that virtually any ordinance it adopts that controls the activities of its citizens is a constitutional enactment.

Ordinances such as C.C. 2171.03(a), which requires pedestrians to yield the right-of-way unless they are in a marked or unmarked crosswalk, or C.C. 2113.05, which requires pedestrians to obey "walk" and "don't walk" signs, and the city's vigorous efforts to stop jaywalking, all protect motorists and pedestrians from the hazard presented by pedestrians crossing busy thoroughfares unexpectedly. The ordinance in question serves no such purpose.

A legislative body cannot constitutionally enact laws prohibiting harmless acts. To do so infringes unduly on the rights of persons not to be deprived of their personal liberty in an arbitrary, discriminatory, capricious or unreasonable manner and violates their rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We hold that C.C. 2171.04(a), which requires pedestrians to walk on the right side of a crosswalk even though no other pedestrian may be in the crosswalk, is an arbitrary and unreasonable exercise of the city's police power and is, therefore, unconstitutional. The second assignment of error is sustained.

For the foregoing reasons, the judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

Cook, J., concurs.

McCormac, J., concurs in part and dissents in part.

Cook, J., of the Eleventh Appellate District, sitting by assignment in the Tenth Appellate District.

McCormac, J. I concur on the basis that the ordinance is unconstitutionally overbroad as applied to the facts of the case. It is not unconstitutional when applied reasonably. There is no indication that it has been or would have been applied unreasonably had not defendant requested that he be cited.

I would assess the costs of the appeal against defendant. It is inexcusable to set up a manufactured situation which diverts the court from its heavy appellate caseload to take the time spent on this case. Defendant should be reminded that the time taken for this case was at the expense of litigants seeking speedy action on bona fide, nonmanufactured disputes.